In re Joyce MACK and Frederick Mack, Debtors.

Joyce MACK and Frederick Mack, Plaintiffs,

v.

COMMONWEALTH OF PENNSYLVA-NIA DEPARTMENT OF PUBLIC WELFARE, Defendants.

Bankruptcy No. 84–00970G.
Adv. No. 84–1246G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 27, 1985.

Oscar N. Gaskins, Philadelphia, Pa., for debtors/plaintiffs, Joyce Mack and Frederick Mack.

Roger T. Margolis, Dept. of Public Welfare, Harrisburg, Pa., for defendant, Com. of Pa., Department of Public Welfare.

James J. O'Connell, Philadelphia, Pa., Trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The first of two issues before us arising under the debtors' complaint for contempt is whether a creditor, a state agency, violated the automatic stay imposed by 11 U.S.C. § 362(a) of the Bankruptcy Code ("the Code") by refusing to forward the husband-debtor's federal income tax refund to him when the creditor received the check after the filing of the chapter 13 petition although the refund is allocable to prepetition wages. The second issue is whether, under a garnishment order directed to the husband-debtor's employer, the creditor violated the automatic stay by continuing to collect and retain funds under that order after the filing of the petition notwithstanding the debtors' protest. For the reasons expressed below, we conclude that under both issues the creditor knowingly and wilfully violated the automatic stay and should be adjudged in contempt.

The facts of this controversy are as follows:[1] The debtors filed a petition for repayment of their debts under chapter 13 of the Bankruptcy Code ("the Code"). Approximately fifteen years prior to the filing of the petition the husband-debtor's former wife filed suit for divorce against him. The state court entered a final order directing him to pay a designated sum of money per week to his former wife for the support of the wife and their child. In 1977 the benefits accruing under the order were assigned to the Commonwealth of Pennsylvania, Department of Public Welfare, ("DPW")[2] for reasons undisclosed in the record. As of the filing of the petition the husband-debtor's outstanding debt to the DPW exceeded $7,000.00, of which apparently only a portion is allocable to installments matured and payable prior to the filing of the petition.

Since some undisclosed time prior to the filing of the petition the husband-debtor's employer has been subject to a state court garnishment order by which the employer has been deducting from the husband-debtor's wages and remitting to the DPW a fixed sum per week. This garnishment has continued since the filing of the petition although the husband-debtor has urged the DPW to desist.

After the filing of the petition the United States Internal Revenue Service ("the IRS") remitted to the DPW a check representing a tax refund to the husband-debtor which is properly allocable to his 1983 calendar tax year, all of which was within the prepetition period. Notwithstanding the husband-debtor's requests to the DPW, it has refused to forward the check to him.

The debtors filed the complaint at bench in which they seek to hold the DPW in contempt for failing to remit the IRS check to them and for continuing to collect and retain funds under the garnishment order after the filing of the petition. In the complaint the debtors request turnover of the IRS check, a cessation of the garnishment, reimbursement of the funds garnished after the filing of the petition and, lastly, payment of attorneys' fees.

We commence our discussion on the issues presented with one of the cardinal principles of bankruptcy, i.e., that on the filing of a petition under the Code an automatic stay arises which generally bars all debt collection efforts against the debtor or

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. The DPW asserts that the assignment was executed pursuant to Section 402(a)(26) of the Social Security Act, 42 U.S.C. § 602(a)(26).

the property of the bankruptcy estate. § 362(a)[3]; *In Re Hardy*, 39 B.R. 64, 65 (Bankr.E.D.Pa.1984). Several exceptions to this bar are expressed in § 362(b), one of which is that the stay does not prohibit "the collection of alimony, maintenance, or support from property that is not property of the estate." § 362(b)(2).

▪ In a chapter 7 case the term "property of the estate" as used in § 362(b)(2), generally includes all legal or equitable interests of the debtor in proper-

3. § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)) operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

(2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the estate;

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title;

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

(6) under subsection (a) of this section, of the setoff by a commodity broker, forward contract merchant, stockbroker, or securities clearing agency of any mutual debt and claim under or in connection with commodity contracts, as defined in section 761(4) of this title, forward contracts, or securities contracts, as defined in section 741(7) of this title, that constitutes the setoff of a claim against the debtor for a margin payment as defined in section 741(5) or 761(15) of this title, or settlement payment, as defined in section 741(8) of this title, arising out of commodity contracts, forward contracts, or securities contracts against cash, securities, or other property held by such commodity broker, forward contract merchant, stockbroker, or securities clearing agency to margin, guarantee, or secure commodity contracts, forward contracts, of securities contracts;

(7) under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by said Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property consisting of five or more living units; or

(8) under subsection (a) of this section, of the issuance to the debtor by a governmental unit of a notice of tax deficiency.

11 U.S.C. § 362(a) and (b). This provision was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 371, § 441, July 10, 1984, but the amendment is without effect in this action since the petition was filed prior to the running of the ninety day "grace" period following the enactment of the amendment. See, Pub.L. No. 98–353, § 553(a) (effective date of amendment). Thus, we have reproduced § 362 as it stood prior to the passage of the amendment.

ty as of the commencement of the case. 11 U.S.C. § 541(a).[4] In a chapter 13 proceeding the Code provides a more expansive concept of the estate which includes not only the property detailed in § 541 but also all property of the type described in § 541 which is acquired after the filing of the petition and earnings from services performed post-petition. 11 U.S.C. § 1306(a).[5] Thus, in a chapter 7 case, wages earned prior to the filing of the petition would be property of the estate, while those earned after that date would not be included, although wages earned prior to the filing of a chapter 13 petition as well as those earned during its pendency would be property of the estate. As applied to a tax refund, such a refund is property of the estate to the extent that the wages to which the refund is allocable is property of the estate. The Supreme Court so held in construing the scope of the estate under the Bankruptcy Act of 1898. *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15

L.Ed.2d 428 (1966); *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). The legislative history of § 541 states that, under the Code, "[t]he result of *Segal v. Rochelle* is followed...." S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978) and H.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, at 5868 and 6323. The case law under the Code holds that *Segal* is still binding. *Doan v. Hudgins* (*In Re Doan*), 672 F.2d 831 (11th Cir.1982); *In Re Sutphin*, 24 B.R. 149 (Bankr.E.D.Va.1982); *In Re DeVoe*, 5 B.R. 618 (Bankr.S.D.Ohio 1980); *In Re Rash*, 22 B.R. 323 (Bankr.D.Kan.1982).

■ In the case at bench, the refund is attributable to deductions in salary that were earned in calendar year 1983. The petition was filed in 1984, and thus all the earnings underlying that refund were generated prior to the filing of the petition.

**4.** § 541. Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtors' spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case. 11 U.S.C. § 541(a). This provision was also amended by the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984. See footnote 3. The amendments to § 541(a) are not effective as to this case and so we have reproduced this provision as it stood prior to the passage of the amendments.

**5.** (a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first. 11 U.S.C. § 1306(a).

Since those wages would be property of the estate, the refund is property of the estate.

■ Having reached the conclusion that the refund is property of the estate we now shift to the topic of whether the garnished wages are included in the estate. Quite simply, as we stated above, in a chapter 13 proceeding the debtor's postpetition wages are property of the estate. The lien created by the garnishment is no impediment to this conclusion since the garnishment is ineffective as to postpetition wages. *Cf.,* *Tabita v. Internal Revenue Service (In Re Tabita )*, 38 B.R. 511 ·(Bankr.E.D.Pa.1984) (under 11 U.S.C. § 547(b) wage deductions made during ninety day preference period under garnishment order were avoidable although the order was obtained more than ninety days prior to the filing of the petition in bankruptcy); 11 U.S.C. § 549.

■ Concluding that the refund and the garnished wages are property of the estate, we must determine whether the DPW violated the automatic stay imposed by § 362(a). Under § 362(a)(3) the auto-

matic stay prohibits "any act to obtain possession of property of the estate or of property from the estate," while § 362(a)(1) bars the "commencement of continuation ... of a judicial ... proceeding against the debtor" on a prepetition claim. Thus, the DPW violated these two provisions by continuing to collect postpetition wages under the garnishment order.[6] As to the tax refund, which we have held is property of the estate, it appears that the DPW violated none of the provisions of *§ 362(a)* by failing to surrender the check to the debtor. Although turnover of the check was apparently mandated by 11 U.S.C. § 542, the debtors have not briefed the issue of whether a violation of that provision is cognizable in a contempt action. We need not address that issue since, as we stated, the DPW did violate the stay by continuing to collect a portion of the husband-debtor's postpetition wages under the garnishment order.

■ The debtors correctly assert that nondischargeable debts and that policy consideration should lead us to hold that the stay is no bar to postpetition collection of its debt. As to its first contention, the nondischargeable debts described in § 523(a)(5) would typically be coincident with the debts outlined in § 362(b)(2) which exempts from the operation of the automatic stay only actions to collect "alimony, maintenance, or support from property that is not property of the estate." Thus, although the debts mentioned in § 362(b)(2) typically would be nondischargeable, Congress saw fit to exempt these debts from the stay only to the extent collection efforts were against property not included in the estate. No provision of § 362(b) states that nondischargeable debts, as such, are excluded from the bar of § 362(a). Thus, nondischargeable debts, and more particularly *debts* for alimony, maintenance and child support, are not categorically exempted from the operation of the automatic stay and are exempted only to the extent provided by § 362(b).

As stated above, the DPW's second point is that due to policy concerns the stay should not bar its postpetition debt collection. Although its point may well be worthy of the consideration by the legislature, we have no discretion to address such matters of policy when faced with a congressional directive as clear as that found in § 362(a) and (b).

6. The DPW contends that the debt in issue is nondischargeable under 11 U.S.C. § 523(a)(5), which states as follows:

§ 523, Exceptions to discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act); or

(B) such debt includes a liability designated as alimony maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a). This provision was also amended by the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984. See footnote 3. The amendments to § 523(a) are not effective here and so we have reproduced this provision as it stood prior to the passage of the amendments.

From this tenable basis on the nondischargeability of the debt, the DPW presents a nebulous argument in which it seems to assert that the automatic stay does not bar the collection of

an action for civil contempt[7] is a proper vehicle for redressing transgressions against § 362(a). *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir.1978), *cert. den.* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Nevertheless, a violation of the automatic stay will not support a finding of contempt in all cases. *Porter v. Goodyear Employees Credit Union (In Re Porter)*, 25 B.R. 425, 427 (Bankr.D.Ver.1982); *Springfield Bank v. Caserta (In Re Caserta)*, 10 B.R. 57–60 (Bankr.S.D.Ohio 1981). Also, "a person cannot be held in contempt of an order about which the person had no knowledge." *Camelia,* 550 F.2d at 51. In order to prevail on an action for contempt the moving party must prove his case by clear and convincing evidence rather than by the usual standard of a preponderance of the evidence. *Schauffler v. Local 1291, International Longshoremen's Assoc.,* 292 F.2d 182 (3d Cir.1961); *Quinter v. Volkswagon of America,* 676 F.2d 969, 774 (3d Cir.1982). As the United States Court of Appeals for the Third Circuit stated:

> The plaintiff has a heavy burden to show a defendant guilty of civil contempt. It must be done by clear and convincing evidence, and where there is ground to doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt.

*Fox v. Capital Co.,* 96 F.2d 684, 686 (3d Cir.1948). "Each violation of the stay must be considered in its entirety, with due consideration given to the underlying facts, prior to a finding of contempt." *Ramage v. Ramage (In Re Ramage)*, 39 B.R. 37, 39 (Bankr.E.D.Pa.1984). "The power of contempt should generally be reserved for action evincing a contumacious frame of mind." *Id.; Revere Copper Products, Inc. v. Hudson River Sloop Clearwater, Inc. (In Re Revere Copper and Brass, Inc.)*, 29 B.R. 584, 589 (Bankr.S.D.N.Y.1983); *First National Bank of Louisville v. Hurricane Elkhorn Coal Corp. (In Re Hurricane Elkhorn Coal Corp. II)*, 19 B.R. 609, 621 (Bankr.W.D.Ky.1982).

We conclude that, in the case at bench, there is no doubt that the state's conduct was wilfull and thus we will hold it in civil contempt. We will accordingly enter an order directing the DPW to surrender the refund check to the debtors, to take all necessary steps to terminate or suspend the garnishment order, and to remit to the debtors all postpetition funds collected under the garnishment order. Within ten days of the entry of the order accompanying this opinion, the debtors shall file a praecipe with the clerk requesting him to schedule a hearing to fix the amount of the attorneys' fees.

### ORDER

AND NOW, to wit, this 27th day of February, 1985, it is

ORDERED that the DPW be, and it is, held in civil contempt for its wilfull and contumacious conduct; and it is further

ORDERED that the Department of Public Welfare of the Commonwealth of Pennsylvania ("the DPW") shall take all necessary steps to vacate the garnishment order directed against the debtor's employer; and it is further

ORDERED that the DPW shall remit to the debtor all postpetition wages collected under that garnishment order; and it is further

ORDERED that the DPW shall surrender to the debtor his 1983 federal income tax refund; and it is further

ORDERED that within ten days of the entry of this order the debtors shall file a praecipe with the clerk requesting him to schedule a hearing to fix the amount of the attorneys' fees to be awarded to the debtors.

---

**7.** The debtors apparently seek a finding of contempt against the DPW since on such a finding we may award attorneys' fees as well as damages for losses or injury occasioned by the alleged contempt. *McComb v. Jacksonville Paper Co.* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1948); *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982); *Pody v. Pody (In re Pody)*, 42 B.R. 570 (Bankr.N.D.Ala. 1984).