In re Glenn Earl BUNN, Debtor.

Bankruptcy No. 4–92–4048.

United States Bankruptcy Court,
D. Minnesota.

Aug. 19, 1994.

Darrel A. Baska, Eagan, MN, for debtor.

Thomas L. Aarestad, Asst. Hennepin Co. Atty., Minneapolis, MN, for creditor Hennepin County.

### MEMORANDUM ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 2nd day of June, 1994, on a motion by Hennepin County Support and Collection Services ("Hennepin County") for an order granting relief from the automatic stay. Appearances were as follows: Thomas Aarestad for Hennepin County; and Darrel Baska for Glenn Earl Bunn ("Debtor").

The sole issue is whether Hennepin County, on behalf of Debtor's ex-spouse, is entitled to relief from the automatic stay to collect a pre-petition child support arrearage where Debtor did not separately classify the arrearage in his chapter 13 plan, but rather provided for 10 percent payment of the debt along with the general unsecured debts. For the reasons stated below, I conclude that Hennepin County is entitled to relief from the stay.

### FACTS

In March, 1988, a Nevada state court entered a Judgment and Decree of Dissolution ordering Debtor to pay $200 per month for 78 months for support of his minor child.[1] Debtor only paid the support for fourteen months. This resulted in an arrearage of $11,600. Debtor's ex-wife then applied to Hennepin County for assistance in collecting the arrearage. The child is now nineteen.

---

1. The Decree is not part of the record. Debtor does not dispute that he was ordered to pay $200 per month for child support obligations.

As such, Debtor does not have an ongoing obligation to pay child support.

On June 4, 1992, Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. Debtor did not list his ex-wife or Hennepin County as a creditor. Nor did Debtor list the child support as a current expenditure on Schedule J. He did list on Schedule I, however, a current deduction of $200 from his paycheck for payment of child support obligations.

Debtor's chapter 13 plan ("the Plan") was confirmed on August 6, 1992. No objections to confirmation were filed. The Plan provided for payments of $400 per month for sixty (60) months. The Plan projects to pay all secured claims in the amount of $9,679, including payments on his Blazer car, and all priority unsecured claims in the amount of $14,321.[2] The unsecured priority claims represent unpaid state and federal taxes. The Plan also allowed payment of ten percent (10%) pro rata payments on all unsecured non-priority claims that total approximately $30,987. This amount includes the child support arrearage[3] and over $10,000 in student loans.

The Plan further states:

Debtor submits all future earnings or other future income to such supervision and control of the trustee as is necessary for the plan. Property of the estate shall vest in the debtor upon dismissal, conversion or discharge under 11 U.S.C. §§ 1307 or 1328 unless the court orders otherwise while the case is pending.

There is nothing in the Plan that provides for the treatment of tardily filed claims.

Because Debtor did not list the child support as an obligation, neither Hennepin County nor Debtor's ex-spouse received notice of the bankruptcy. It appears that after Debtor filed his petition for relief, Hennepin County informed him of its collection efforts. At that point, Debtor told Hennepin County of the chapter 13 Plan in effect. On Febru-ary 15, 1994, Hennepin County filed a proof of claim in the amount of $11,600, representing the full amount of the child support arrearage ("the claim"). On May 17, 1994, Hennepin County filed the current motion for relief from the automatic stay to collect Debtor's past-due child support obligations.

### DISCUSSION

**A. Treatment of Hennepin County's Claim**

As a preliminary matter, I note that Hennepin County's claim was tardily filed and, therefore, Hennepin County's rights are defined by the Plan. *See In re Hausladen,* 146 B.R. 557, 560 (Bankr. D.Minn.1992). Here, the Plan does not distinguish timely filed claims from tardily filed claims. Accordingly, Hennepin County has an allowed unsecured claim and is entitled to share pro rata in distributions with all other unsecured nonpriority claimants.

**B. Relief From the Automatic Stay**

The filing of a bankruptcy petition operates as a stay against all acts to acquire property of the debtor or to recover a claim against the debtor that arose pre-petition. 11 U.S.C. § 362(a). Section 362(b)(2) carves out an exception to § 362(a) and states that the filing of a petition does not stay "collection of alimony, maintenance, or support from *property that is not property of the estate.*" 11 U.S.C. § 362(b)(2) (emphasis added). Therefore, the relevant inquiry when seeking relief from the stay to collect pre-petition child support obligations is whether the creditor is seeking to collect the support from property of the estate.

"Property of the estate" is defined by § 541. In a chapter 13 case, the definition is supplemented by § 1306, which includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed or converted...." 11 U.S.C. § 1306(a)(2). Section 1306, however, cannot be read alone since § 1327(b) states that *"Except as other-*

---

2. Debtor's counsel indicated at the hearing that Debtor's current payments are not sufficient to satisfy the terms of the Plan and debtor must amend the Plan to pay all secured and priority claims in full.

3. The child support arrearage was not originally part of the Plan. This amount includes Hennepin County's proof of claim that was filed post-confirmation.

*wise provided in the plan* or the order confirming the plan, the confirmation of a plan vests all property of the estate in the debtor." 11 U.S.C. § 1327(b).

Courts differ as to the meaning of these two sections. Some courts hold that the chapter 13 estate continues to exist after confirmation and includes the debtor's post-petition earnings that support the plan. Other courts find that, unless the plan provides otherwise, confirmation of a plan vests all property of the chapter 13 estate in the debtor. Recently, the Eighth Circuit agreed with the first line of cases and held that confirmation of the plan does not extinguish the estate. *Security Bank of Marshalltown, Iowa v. Neiman,* 1 F.3d 687, 690 (8th Cir. 1993).

In the present case, the Plan explicitly provides that property of the estate does not vest with Debtor until either dismissal, conversion or discharge. None of these events have occurred. Since Hennepin County seeks to recover the child support arrearage from property of the estate, the exception of § 362(b)(2) does not apply. *See also Denn v. Aarestad (In re Denn),* 37 B.R. 33, 35–36 (Bankr.D.Minn.1983) (holding that a plan with identical language protected the debtor's post-petition wages from efforts to collect past-due child support obligations). Accordingly, Hennepin County is not entitled to relief from the automatic stay pursuant to § 362(b)(2). *See also In re Walter,* 153 B.R. 38, 40 (Bankr.N.D.Ohio 1993) (the stay precludes collection of a child support arrearage from post-petition earnings since the earnings are property of the estate); *Lawson v. Lackey (In re Lackey),* 148 B.R. 626, 629 (Bankr.N.D.Ala.1992) (denying post-confirmation relief since no property available for the collection of child support that was not property of the estate); *Gaertner v. Choske (In re Henry),* 143 B.R. 811, 814 (Bankr. W.D.Pa.1992) (former spouse not entitled to garnish debtor's wages since debtor's future earnings were property of the estate until the chapter 13 plan was completed or the case was converted to a 7). *But see Pacana v. Pacana–Siler (In re Pacana),* 125 B.R. 19, 24 (9th Cir. BAP 1991) ("child support claimants need not wait in line with [ordinary unsecured creditors], but rather may proceed against the debtor without the hindrance of either the automatic stay or discharge").

■ Nonetheless, Hennepin County insists that it is entitled to relief from the stay for cause pursuant to 362(d)(1). It cites two reasons.

*First,* it maintains that domestic matters are under the exclusive jurisdiction of state courts, thereby divesting the bankruptcy court of authority to decide issues relating to child support. Hennepin County relies on *Caswell v. Lang (In re Caswell),* 757 F.2d 608 (4th Cir.1985) which held that a federal court may not interfere with the remedies provided by a state court in domestic matters and therefore past due support obligations may not be included in a chapter 13 plan. *Id.* at 610. *See also McCray v. McCray (In re McCray),* 62 B.R. 11, 12 (Bankr.D.Colo. 1986) (granting relief from stay for cause since domestic matters are reserved to the states and support obligations cannot be included in a chapter 13 plan).

*Caswell* has been widely criticized, particularly in light of *Ankenbrandt v. Richards,* — U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), which held that the domestic relations exception to a federal court's jurisdiction only encompasses cases involving the issuance of a divorce, alimony or child support decree. *Id.* at —— – ——, 112 S.Ct. at 2214–16. In the present case, I am neither issuing nor altering a child support decree. I am merely deciding how a creditor seeking to collect past-due child support should be treated in a chapter 13 proceeding.

■ Moreover, Congress intended child support claims to be dealt with in bankruptcy cases. This is illustrated by both the nondischargeability provisions of §§ 523(a)(5) and 1328(a)(2), and the exception to the automatic stay set forth in § 362(b)(2). *In re Raboin,* 135 B.R. 682, 685 (Bankr.D.Kan.1991); *Walter,* 153 B.R. at 39–40; *Lackey,* 148 B.R. at 630; *Henry,* 143 B.R. at 813; 1 Keith M. Lundin, *Chapter 13 Bankruptcy,* § 3–95 (1994) (noting that the enforcement of support obligations against a chapter 13 debtor is clearly subject to the jurisdiction of the bankruptcy courts). *See also Mickelson v.*

*Leser (In re Leser)*, 939 F.2d 669, 672 (8th Cir.1991) (allowing child support debts to be treated favorably in chapter 13 plans).

*Second,* Hennepin County insists that enforcement of the automatic stay unfairly insulates Debtor from paying his child support obligations while unduly prejudicing his ex-wife and child. This result, according to Hennepin County, is contrary to the purpose of the Code and is contrary to public policy which favors special treatment of child support debts in bankruptcy: "The Bankruptcy Code was never intended to create a sanctuary for the man who wished to avoid his legal and moral obligation to support his children." Hennepin County's Memorandum of Law, at 2.

■ Hennepin County's concern is well taken. As I have previously said, I am troubled by the effect chapter 13 has on child support obligations. *See In re Whittaker,* 113 B.R. 531, 533 (Bankr.D.Minn.1990). Yet, this concern does not allow the courts to indiscriminately grant relief from the stay to any creditor seeking to collect past-due child support outside of the plan. Quite the opposite, the payment of child support debts in a chapter 13 plan may be the most beneficial means of curing an arrearage for both the debtor and the creditor. Payment under a plan, as opposed to payment outside of the plan, may encourage a debtor who has fallen behind in support payments to cure the arrears while under protection of chapter 13. Likewise, a former spouse may recover child support more efficiently through a chapter 13 plan than by efforts outside the plan since relief from the stay does not guarantee actual payment of the debt. *See* 1 & 2 Lundin, §§ 3-95, 6.30.

■ This does not mean, however, that relief from the stay is never an appropriate remedy for creditors holding child support claims. One such instance is when the debtor uses chapter 13 as a method of avoiding child support responsibilities instead of earnestly trying to repay the debt. In other words, courts should be willing to grant relief when a debtor's treatment of the child support debt was proposed in bad faith.

■ The relevant inquiry, therefore, is at what point should a court grant relief from the automatic stay to allow a creditor to recover child support obligations outside the plan. This is a fact specific inquiry that should be determined based on the language of the plan. Clearly, if the plan were to provide for full payment of the child support debt, relief from the stay would not be appropriate. Another indicia of good faith would be the placement of the debt in a separate class to be paid after the priority debts but before other unsecured debts. If the plan does not provide for such favorable treatment, the automatic stay should be lifted to allow the creditor to pursue remedies outside the plan. *See also Walter,* 153 B.R. at 40 (suggesting that relief from stay should be granted when the plan does not provide for full payment of nondischargeable child support debts); *Lackey,* 148 B.R. at 629-30 (noting that relief from the stay would be warranted if a plan did not adequately provide for payment of claim); *In re Storberg,* 94 B.R. 144, 148 (Bankr.D.Minn.1988) ("it would be difficult to deny relief from the automatic stay to a holder of a claim for alimony, support or maintenance if the debtor's plan did not provide for payment in full.")

The Eighth Circuit has implicitly endorsed this view. In *Mickelson v. Leser (In re Leser),* it held that the separate classification of a nondischargeable child support debt which was to be paid in full did not unfairly discriminate between general unsecured creditors. *Leser,* 939 F.2d at 672. The court when on to state:

> [T]he failure to pay back child support in full indicates a lack of good faith barring confirmation. Thus, it is doubtful that a Chapter 13 plan could be confirmed in most instances without a separate classification for child support absent the relatively rare 100% payout plan.

*Id.* at 672 (quoting *In re Davidson,* 72 B.R. 384, 387 (Bankr.D.Colo.1987)). *See also Whittaker,* 113 B.R. at 534 (holding that separate classification of child support obligations that provide for payment in full did not discriminate unfairly against general unsecured claims); *Storberg,* 94 B.R. at 144 (public policy specially treats child support

claimants and therefore a chapter 13 plan may specially treat them as well).

 Public policy favors preferential treatment of child support debts in chapter 13 cases. Such treatment at a minimum entails separate classification of the child support debt. If a debtor does not propose a plan that separately classifies the child support arrearage, it may be inferred that the debtor proposed the plan in bad faith for the purpose of circumventing child support obligations. As such, the ex-spouse should be entitled to relief from the stay to collect the arrearage outside of the plan.

In the present case, Debtor lacked good faith in proposing his chapter 13 Plan. Debtor has a deplorable history of not paying his child support obligations. For several years prior to filing his petition, Debtor spent disposable income while ignoring his obligations to the taxing authorities, his former wife and child, and student loan creditors. He has started a new family and maintained the payments on his home and his Blazer, but he has not made payments in support of the child of his first marriage. Rather than attempting in good faith to partially rectify the situation by, at the very least, placing the unsecured debt to the child of his former marriage in a separate class, he proposes to relegate that claim to the lowest level of priority along with all other unsecured creditors. To make matters worse, he failed to list his child support obligations as a debt, thereby foreclosing meaningful participation by Hennepin County or his ex-wife in the plan process. He also improperly included $200 as a current expense when, in fact, his child was or would within the plan term turn nineteen and he would no longer be required to pay child support and when, in fact, he had not been and apparently had no intention of paying that debt. These facts show that debtor did not propose his Plan in good faith.

Accordingly, Hennepin County's motion for relief from the stay should be granted for cause pursuant to § 362(d)(1).

## CONCLUSION

Hennepin County is not entitled to relief from the stay pursuant to § 362(b)(2) since it seeks to collect the debt from property of the estate. Hennepin County is, however, entitled to relief from the stay for cause under § 362(d)(1) since Debtor did not propose the Plan in good faith.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. The motion by Hennepin County for relief from the automatic stay is GRANTED; and

2. The effective date of this Order is stayed for 15 days to allow Debtor to file an amended plan which conforms to the dictates of this opinion.